**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

CAROL L. VAUGHN                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 1:09-CV-247-SA-JAD

WOODFOREST BANK                                                                DEFENDANT

## MEMORANDUM OPINION

For the reasons stated below, the Court finds that Plaintiff has failed to provide any evidence that Defendant's purported reasons for terminating her were pretext for discrimination. However, the Court reserves ruling on Plaintiff's mixed-motive argument, pending further briefing by the parties.

## I. BACKGROUND

Defendant hired Plaintiff – a white woman – in September 2008 as an Assistant Branch Manager for its Starkville, Mississippi, branch, which is located in a Wal-Mart. Misty Gaskamp, Defendant's Regional Vice-President for Mississippi and Louisiana, gave final approval for Plaintiff's hiring. Shortly after Defendant hired Plaintiff as Assistant Branch Manager, they terminated the Branch Manager at the Starkville branch. Defendant considered several applicants for the Branch Manager position – including Plaintiff and Rhonda Williams, an African-American employee at the Starkville branch. Ultimately, Defendant promoted Plaintiff to the Branch Manager position.

As Branch Manager, Plaintiff's duties included marketing, addressing personnel issues, and maintaining a comfortable working environment for employees and customers. During Plaintiff's tenure as Branch Manager, Defendant received complaints concerning Plaintiff's behavior and management of the bank. Specifically, an employee told Gaskamp that Plaintiff was frequently

unprofessional and allowed personal issues to interfere with branch operations. Therefore, Gaskamp conducted an investigation and personally interviewed several branch employees. After Gaskamp's investigation, Defendant fired Plaintiff on February 20, 2009. Gaskamp and Executive Vice-President Julie Mayrant made the decision. The "Termination Form" generated upon Plaintiff's termination states that Plaintiff "made inappropriate comments in the presence of employees and customers that created a perception of racial discrimination and uncomfortable environment due to lack of confidentiality."

Gaskamp's deposition testimony reveals three occurrences that motivated Defendant's decision to terminate Plaintiff. All of them involve what Gaskamp described as "racial" comments. At some point during Plaintiff's brief tenure as Branch Manager, she interviewed Racheal Burnett, a white woman, for a Retail Banker position. During the interview, Plaintiff allegedly told Burnett that she was not prejudiced because she managed the bank's staff "as is," which Gaskamp characterized as referring to the fact that the bank's staff – other than Plaintiff – was comprised entirely of African-American employees. Gaskamp stated that it was "extremely unprofessional" for Plaintiff to imply to an interviewee that she was not prejudiced toward African-Americans. She further stated, "[I]f you talk about race in the workplace it's racial discrimination." Plaintiff testified that she only told Burnett that she could work and get along with anybody, and that she hoped Burnett was the same way.

The second event that Gaskamp claimed motivated her decision to terminate Plaintiff occurred on the day of the Presidential inauguration in early 2009. As the bank's staff watched the inauguration on television, Plaintiff commented that she wished the media would stop making President Obama's election a "black and white issue." Later that day, Plaintiff told her African-

American subordinates that her Sunday School class had prayed that nothing would ever happen to President Obama. She further stated that people at her church had said President Obama changed his religion from Islam to Christianity, and her Sunday School class had prayed that if something were to "happen to him," that it would be "his own people" who did it, rather than "Americans." During her deposition, Gaskamp maintained that these comments were discriminatory. When asked who Plaintiff purportedly discriminated against, Gaskamp replied, "I don't know." Plaintiff does not dispute any of the above facts concerning the occurrences on inauguration day.

Finally, at one point during Plaintiff's tenure as Branch Manager, Marcie Langenburg – one of Defendant's human resources employees – called Plaintiff to ask if anyone in the branch had used a particular racial epithet. Plaintiff was not aware of any such occurrence, but she later observed an argument between two employees – Sade Gore-Burgin and Khalilah Vickers. Vickers had called human resources and reported that Gore-Burgin had used the particular epithet at work, during a telephone conversation with her husband. Plaintiff told them they were not permitted to use that term in the workplace. She also told another employee – Tocarra Key – that she had once used the word to describe a white girl when she was younger. She further stated that she did not think the term had anything to do with race, but, rather, that it was "somebody that's [a] sorry and low-down person." Plaintiff does not dispute the above facts concerning her comments about the use of a racial epithet.

After filing the requisite charge of discrimination with the EEOC, Plaintiff filed her Complaint on September 29, 2009. Defendant filed its Motion for Summary Judgment on September 16, 2010, and it is ripe for review.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 F. App'x 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## III. DISCUSSION

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff claims that Defendant discriminated against her because of her race. She may prove discrimination by direct or circumstantial evidence. Salinas, 314 F. App'x at 698; Nasti v. CIBA Specialty Chems., 492 F.3d 589, 593 (5th Cir. 2007). In the present case, Plaintiff employs the latter method.

Title VII discrimination cases built on circumstantial evidence are analyzed under the familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under McDonnell Douglas, Plaintiff must first establish a prima facie case of discrimination by establishing that (1) she was a member of a protected group; (2) she was qualified for the position she held; (3) she suffered an adverse employment decision; and (4) she was either replaced by someone outside her protected group or treated less favorably than employees not in her protected group. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001).

Once Plaintiff has made her prima facie case, Defendant has the burden of producing a legitimate, nondiscriminatory reason for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). Defendant's burden at this stage is merely one of production – not persuasion. Id. If Defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by Plaintiff's prima facie case disappears. St. Mary's Honor Ctr. v. Hicks,

5

509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Plaintiff must rebut Defendant's legitimate, nondiscriminatory reason for an adverse employment action by proving that "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Davis v. Farmers Ins. Exch., 372 F. App'x 517, 519 (5th Cir. 2010).

Under the pretext alternative, Plaintiff must present substantial evidence that Defendant's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Id. (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). If Plaintiff attempts to show pretext by evidence of disparate treatment, she is required to "compare [her] treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). She must show that Defendant gave preferential treatment to another employee – of a different race – under "nearly identical" circumstances. Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578. A showing of pretext may be insufficient to establish discrimination "(1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred." Id.

However, the mixed-motive alternative merely requires that Plaintiff present evidence that

6

the protected characteristic "played a motivating part" in the employment decision at issue. Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). No matter which route Plaintiff chooses, she "has the ultimate burden of proving intentional discrimination." Davis, 372 F. App'x at 519; see also Warren v. City of Tupelo, 332 F. App'x 176, 180 (5th Cir. 2009).

Defendant concedes, for the purposes of this motion, that Plaintiff has presented sufficient evidence to make out a prima facie case of discrimination. In response, Defendant has presented the following reason for Plaintiff's termination: unsatisfactory conduct in the form of inappropriate comments regarding race.[1] This is a legitimate, nondiscriminatory reason for termination. See Prejean v. Radiology Assocs. of Sw. La., Inc., 342 F. App'x 946, 950 (5th Cir. 2009) (employer's concerns about employee's professional conduct and behavior was legitimate, nondiscriminatory reason); Preston v. Tex. Dep't of Family & Protective Servs., 222 F. App'x 353, 359 (5th Cir. 2007) (unprofessional verbal communications with co-workers was legitimate, nondiscriminatory reason). Therefore, the Court must determine whether Plaintiff has met her burden under either the pretext alternative or the mixed-motive alternative.

## A.    *Pretext Alternative*

### 1.    *Whether Plaintiff's Comments Were Racist*

In the present case, Plaintiff does not dispute the material facts underlying Defendant's purported reason for her termination. Rather, Plaintiff argues that the comments for which she was

---

[1] Gaskamp's testimony and the Termination Form generated upon Plaintiff's termination also cite "lack of confidentiality" as a reason for Plaintiff's termination. Neither party addressed this purported reason for termination in their briefing or provided any evidence on the issue. Therefore, the Court will not address it.

7

fired were not racist, and, therefore, she concludes that Defendant's purported reason for terminating her was pretext for discrimination. It is not the Court's place to "second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination." Jackson v. Watkins, 619 F.3d 463, 468 n. 5 (5th Cir. 2010). Indeed, "[o]ur anti-discrimination laws do not require an employer to make proper decisions, only [non-discriminatory] ones." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). The Fifth Circuit Court of Appeals has observed that the "existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991) (citing Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507 (5th Cir. 1988)). Therefore, even if Defendant was incorrect in its evaluation of Plaintiff's comments, its evaluation may still constitute a legitimate, nondiscriminatory reason for Plaintiff's termination. The Court's task is to determine whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to Defendant's motivation in terminating her – not to second-guess Defendant's policies concerning appropriate behavior by its management staff. See Id. ("Further, even an incorrect belief that an employer's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.").

The Court expresses no opinion as to the nature of Plaintiff's comments or the accuracy of Defendant's evaluation of her comments. However, that Plaintiff's comments may not have actually been racist in their intent or effect is of no consequence to the question of whether Defendant was motivated by a good faith belief that the comments were unprofessional and might create a

perception of racial bias. In other words, Plaintiff must present evidence that her race motivated Defendant's decision, and the fact that Defendant may have erroneously characterized her comments as racist is irrelevant to that issue. Accordingly, the Court rejects Plaintiff's argument that an employer's alleged misconstrual of workplace comments as racist is necessarily evidence of pretext.

*2.     Disparate Treatment of Similarly Situated Individuals*

Plaintiff also argues that Gaskamp was afraid of being sued by African-American employees and fired Plaintiff to create a perception that it took allegations of racism seriously. Plaintiff contends that while this conduct may not constitute animus toward white employees, it is nonetheless differential treatment based on race. In support of this argument, Plaintiff cites several examples of employees who commented on racial issues but were not terminated.

"Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination . . . ." Bryant, 413 F.3d at 478 (citing Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990)). However, Plaintiff must show "nearly identical circumstances" for another employee to be considered "similarly situated." Berquist v. Wash. Mut. Bank, 500 F.3d 344, 353 (5th Cir. 2007). Therefore, the misconduct for which Plaintiff was discharged must be "nearly identical" to the misconduct engaged in by the other employee. Merritt v. UPS, 321 F. App'x 410, 413-14 (5th Cir. 2009) (citing Okoye, 245 F.3d at 514). Further, the "employee being compared must have 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" Brooks v. Lubbock Cnty. Hosp. Dist., 373 F. App'x 434, 436 (5th Cir. 2010) (quoting Lee v. Kan. City S. Railway Co., 574 F.3d 253, 259 (5th Cir. 2009)); see also Merritt, 321 F. App'x at 414. Finally, Defendant must also have been aware of the alleged misconduct of the other

employee. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001).

Plaintiff first compares her termination to Defendant's treatment of Linda Young. Young, an African-American woman, was the Assistant Branch Manager at Defendant's Starkville branch, and she was promoted to Branch Manager after Plaintiff's termination. First, Plaintiff alleges that Young told her – at some point during Plaintiff's tenure as Branch Manager – that "her and I were just like sisters, only difference is that she is black, and I am white, that we think alike and act alike." When Young allegedly made this statement, she was Plaintiff's subordinate, the Assistant Branch Manager. Therefore, she and Plaintiff were not similarly situated, for purposes of showing disparate treatment. See Merritt, 321 F. App'x at 414 (comparator identified by plaintiff was not "similarly situated," as comparator was plaintiff's supervisor). Furthermore, the circumstances surrounding the two statements were dissimilar, insofar as the record does not contain any evidence that Gaskamp received complaints about Young's statement, while it is undisputed that Gaskamp received complaints concerning Plaintiff's statements. This is an important distinction, as Defendant cites its concern for the potential perception of racism as a motivating factor in its decision to terminate Plaintiff. Finally, the record contains no evidence that this comment was made in the workplace during work hours.

Plaintiff also points to a written statement by Young. After Plaintiff was terminated, she called Young to discuss the reasons for her discharge. Defendant's human resources department later asked Young to provide a written statement regarding that conversation. With regard to Plaintiff's comments surrounding the Presidential inauguration, she stated: "I began to tell her she cannot say things like that number one because of your position and number two you are a white woman and you have all these black people watching something that was very dear to them."

10

Plaintiff argues that Defendant's failure to terminate Young for this conversation and written statement constitutes disparate treatment. The Court disagrees.

With respect to the conversation, Plaintiff's comments took place in the workplace during work hours, while Young's were made during a private phone conversation. Furthermore, there is no evidence that any employee complained to Defendant about the conversation. Additionally, Young's provision of a written statement pursuant to Gaskamp's request is not "nearly identical" to Plaintiff's comments in the workplace, as Young's written statement was part of an official internal investigation. Further, Defendant received no complaints from employees about Young's written statement – as it did concerning Plaintiff's comments. Therefore, Young is not "similarly situated" to Plaintiff, for all of the above reasons.

Next, Plaintiff attempts to compare her treatment to that of Racheal Burnett, a white woman. However, disparate treatment of Burnett would not allow an inference that Defendant terminated Plaintiff because she was white, as Burnett is also white. Further, Burnett was employed as a Retail Banker – a position subordinate to Plaintiff. Plaintiff admitted during deposition that the Retail Bankers had no management duties.

Plaintiff also compares her situation to that of Sade Gore-Burgin. Gore-Burgin allegedly used a racially derogatory term in the workplace. However, Gore-Burgin – like Burnett – was a Retail Banker, while Plaintiff was the Branch Manager. Further, Defendant's human resources staff investigated Gore-Burgin's alleged use of a racial epithet, and Gore-Burgin claimed that the employee who contacted human resources merely misunderstood what she said. In contrast, Plaintiff admitted that she told another employee that she no longer used the particular racial epithet, as she had been disciplined for using it in a prior job. She further admitted to telling another worker

11

that she did not view the particular racial epithet as involving race, but, rather, that she defined it as a "sorry low-down person." Therefore, Gore-Burgin is not similarly situated with Plaintiff.

Finally, Plaintiff compares her situation to that of Rhonda Williams. Plaintiff claims that Williams had attendance problems, wrote bad checks, and was rude to a white coworker in front of customers, and Plaintiff asserts that Gaskamp never disciplined Williams because she was afraid that Williams would file a lawsuit against Defendant. Like Burnett and Gore-Burgin, Williams was a Retail Banker, a position subordinate to Plaintiff with no management duties. Further, Williams' alleged misconduct is not nearly identical to Plaintiff's misconduct. The mere fact that she was rude to a white coworker, without more, does not allow an inference that she made potentially racist comments. Therefore, Williams is not similarly situated to Plaintiff.

For all the reasons stated above, the Court rejects Plaintiff's argument that Defendant's disparate treatment of other employees is evidence of pretext. Having also rejected Plaintiff's argument that Defendant's alleged misconstrual of her comments is evidence of pretext, the Court holds that Plaintiff has failed to carry her burden under the pretext alternative of the McDonnell Douglas framework.

### B.    *Mixed-Motive Alternative*

Plaintiff alternatively argues that her race "played a motivating part" in her termination. Price Waterhouse, 490 U.S. at 258, 109 S. Ct. 1775. However, Plaintiff failed to specify any record evidence to support this argument, and her mere assertion that race was a motivating factor is insufficient to survive a motion for summary judgment. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

A Title VII plaintiff may not meet her summary judgment burden by merely asserting that

the evidentiary record provides evidence of the defendant's mixed motives. The Court will not mine the record for evidence to support a plaintiff's bald assertion of discrimination. Rather, it is the plaintiff's responsibility to rebut the defendant's legitimate nondiscriminatory reason for termination by pointing to *specific* evidence to support her argument that race was a motivating factor in her termination.

Accordingly, the Court orders Plaintiff to supplement her response to Defendant's Motion for Summary Judgment within ten (10) days of the entry of this opinion. Plaintiff shall point to *specific* evidence of Defendant's mixed motives that is already in the record. Plaintiff shall not use this supplemental brief as an opportunity to reargue the pretext alternative, raise any new arguments, or present any new evidence. If Defendant wishes to file a reply to Plaintiff's supplemental response, it shall do so within ten (10) days of the filing of Plaintiff's supplemental response.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has failed to provide any evidence that Defendant's purported reasons for terminating her were pretext for discrimination.

However, the Court reserves ruling on Plaintiff's mixed-motive argument, pending further briefing by the parties. Plaintiff shall file a supplemental response to Defendant's Motion for Summary Judgment within ten (10) days of the entry of this opinion. If Defendant wishes to file a reply to Plaintiff's supplemental response, it shall do so within ten (10) days of the filing of Plaintiff's supplemental response. Once the Court has received and reviewed the parties' supplemental briefs, it will make a final decision regarding Plaintiff's mixed-motives argument in response to Defendant's Motion for Summary Judgment [34].

An order consistent with this opinion shall be entered on this, the 17th day of December,

2010.

                                                  **/s/ Sharion Aycock**
                                                  **UNITED STATES DISTRICT JUDGE**